FILED

2009 Sep-30  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BELINDA ANN SCRUGGS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CV-08-BE-1489-NE** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On March 7, 2007, Claimant, Belinda Ann Scruggs, applied for disability insurance

benefits and supplemental security income under Titles II and XVI of the Social Security Act,

respectively.  Claimant alleges disability commencing on February 16, 2007.  The state agency

initially denied the claims on June 14, 2007. Consequently, she requested a hearing before an

Administrative Law Judge (ALJ), and the ALJ held a video hearing on November 26, 2007.

Claimant testified at the hearing in Decatur, Alabama, while the ALJ presided over the same

from Florence, Alabama. In a decision dated February 28, 2008, the ALJ found that Claimant

was not disabled under the Social Security Act, and thus, was ineligible for disability insurance

benefits and supplemental security income. (R. 14, 27). On July 21, 2008, the Appeals Council

denied the claimant's request for review and, as a result, the ALJ's decision became the final

decision of the Commissioner. (R. 7). Claimant has exhausted all administrative remedies. This

court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated

below, this court reverses the decision of the Commissioner.

## II. ISSUE PRESENTED

The Claimant argues that the ALJ did not properly apply the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the decision if the ALJ applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No ... presumption of validity attaches to the [Commissioner's] legal conclusions including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971)(quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180-1181 (11th Cir. 1986) (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)).

2

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity" because "of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether the claimant is able to perform substantial gainful activity, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to steps one, two, and four leads to the next question. On steps three and five, an affirmative answer constitutes a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

In evaluating pain and other subjective complaints, the ALJ must have considered whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (emphasis added); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## V. FACTS

Claimant, Belinda Ann Scruggs, has a high-school education and was forty-one years old

3

at the time of the administrative hearing. (R. 1338). Her past work experience includes employment as a child care attendant, teacher's aide, and an office file clerk. (R. 69, 1339). Claimant asserts that she has been unable to work since February 16, 2007 because of "chronic abdominal pain [from] pancreatitis," hypertension, gastroesophageal disease, and alleged anxiety, swelling, and nausea. (R. 68, 106, 76-81).

*A. Physical Limitations*

Claimant's medical records show that she has a long history of treatment for abdominal pain, often accompanied by nausea, vomiting, and diarrhea; she obtained medical care for abdominal pain a few times in 1995 (R. 206-207, 216) and continued to receive treatment  for such problems on numerous occasions from 2003 until the alleged commencement of her disability in 2007. (R. *passim*). Since 2003, doctors have prescribed for her abdominal pain such medications as Demerol, Hydrocodine, Mepergan, and Lortab, all narcotics used to treat moderate to severe pain, and in both 2005 and 2006 she received a celiac plexus block (injection of local anesthetics, steroids, or ethyl-alcohol to block nerves that come from the pancreas, liver, gall bladder, stomach and intestine). (R. 145-153; 385-389).

Claimant asserts that her disability began on February 16, 2007. (R. 14). From that day through February 4, 2008, her medical records show that she visited the emergency room more than 20 times, most of which resulted in being held overnight; that she was hospitalized on eight occasions with stays of no less than two days at a time; and that she underwent numerous other medical treatments and procedures. She has received 50 mg - 100 mg. of Demerol and was prescribed Lortab, on what appears to be a regular basis, for pain.(R. *passim*).

All of the ER and hospital visits during 2007 involved treatment for abdominal pain.  On

4

January 5, 2007, Claimant was rushed to the emergency room by ambulance, because she experienced "vivid [abdominal pain]," accompanied by an escalating fever, diarrhea, and vomiting. (R. 340). She stated that her pain was a 10 on a scale of 10, and the attending physician gave her pain medication. (R. 344-346). Approximately five hours later, her pain had reduced to 5/10. (R. 345). Upon discharge, the attending physician instructed her to take the prescribed medication, but otherwise "resume normal activity," and diagnosed her with epigastric pain. (R. 346).

Approximately three weeks later on January 24, 2007, the Claimant again arrived at the emergency room by ambulance and complained of nausea, which she claimed to have resolved prior to arrival by medication, and epigastric pain that radiated toward her back. (R. 329, 332). After the doctor administered Demerol, the Claimant stated she did not want to wait to see if the medication was effective and wanted to leave. (R. 333). Upon discharge, she was diagnosed with acute epigastric pain with a history of pancreatitis. (R. 334). The doctor instructed her to rest at home and to see a "regular doctor for [her] problems," because her "frequent ER visits" suggested that she "need[ed] to be evaluated." (R. 334). On February 15, and February 22, 2007, the Claimant returned to the same emergency room and cited similar symptoms on both occasions. (R. 305-327). Upon discharge, she was diagnosed with chronic pain and abdominal pain, respectively. (R. 323).

From February 25 to March 6, 2007, Claimant was admitted into Huntsville Hospital for "intractable abdominal pain." (R. 189-191, 209-210, 228-248, 366-368). During this time, Claimant's treating physician, Dr. Arthur M. Williams, noted that records of her numerous hospital visits indicated that her "clinical symptoms far outweigh[ed] her objective findings,"

and upon his own assessment, determined that she suffered from an acute flare-up of pancreatits; history of chronic pancreatits; hypertension; a history of gastroesophageal reflux disease; and was undergoing estrogen replacement therapy. (R. 230). Additionally, in reviewing her records, he noted that she had a "significant past medical history for chronic pancreatitis with frequent flares," and admitted her because of her numerous visits to the emergency room, but was unable to determine the source of her abdominal pain. (R. 229). After her physician consulted with the Tennessee Valley Pain Clinic, Claimant underwent a celiac plexus block on February 25 (R. 231-232), and also an endoscopic retrograde cholangiopancreatography (ERCP), on March 5, 2007. (R. 235).

On March 16 and March 25, 2007, Claimant visited the emergency room, complaining of abdominal pain, and was treated with Demerol. (R. 278-289, 290-304). Upon discharge, she was diagnosed with abdominal pain, and exacerbation of chronic pancreatitis and hypertension, respectively, and prescribed Lortab. *Id.*

On April 12, 2007, she went to the emergency room at Huntsville Hospital, where the admitting physician noted that she "appeared to be crying" and "to be extremely uncomfortable." (R. 252).  From April 12-20, 2007, she was hospitalized  because she complained of pain so severe that she could not function (R. 249-266). On April 12, Dr. Dennis Fernandez expressed that he thought Claimant suffered from chronic pancreatitis in his consultation report, wherein he recommended a diagnostic laparoscopy. (R. 256) On April 18, Dr. Fernandez performed the laparoscopy procedure and reported that it showed intra-abdominal adhesions. (R. 253, 654). His preoperative diagnosis was chronic abdominal pain and pancreatitis; his post-operative diagnosis was the same. *Id.*

On May 9, 2007, Claimant went to the emergency room, complaining of abdominal pain. (R. 267-277). The emergency room doctor noted that her "body language indicate[d] pain," and she was treated with Demerol. (R. 272-273). She visited the emergency room again on May 15, 2007, and complained of "stabbing" abdominal pain and was treated again, with Demerol. (R. 643). She returned on May 19, 2007, and complained of abdominal pain. (R. 503-514). Her non-verbal pain assessment described her as "restless" and "crying" due to the pain. (R. 507). She was given Demerol for pain, but was treated with an equal dosage of the same 1 hour and 24 minutes later. (R. 508).

On May 25-June 4, 2007, Claimant was hospitalized at Huntsville Hospital. (R. 363-365, 429-441, 586-587, 653-795). During this hospital stay, Dr. Johnson noted difficulty in getting Claimant's pain under control.(R. 654). Even after a celiac plexus block on May 29, 2007, her "pain level still appeared to be the same." *Id.*  In her discharge summary report, Dr. Angela Ross-Johnson, diagnosed Claimant with "chronic abdominal pain that improved but [had] not completely resolved, [and] hypertension." *Id.*

On June 10, 2007, Claimant went to the emergency room and complained of abdominal pain. (R. 489-502). She was treated with Demerol and upon discharge, she was diagnosed with constipation. *Id.* The following night, June 11, she visited the emergency room again, and expressed the same abdominal discomfort. (R. 562-572). From June 14 to June 20, 2007, she was hospitalized at Huntsville Hospital. (R. 422-428, 796-900). Upon admission, she appeared to be "extremely uncomfortable," (R. 427), and was diagnosed with exacerbation of abdominal pain and chronic pain; upon discharge, she was diagnosed with abdominal pain that was improving. (R. 422). She visited the emergency room again on June 24 and June 28, 2007, and on both

occasions, was diagnosed with abdominal pain. (R. 540-549, 551-558, 561). On June 30-July 7,

2007, Claimant was hospitalized at Huntsville Hospital. (R. 411-421, 901-1008). The day she

was admitted, she received a fluoroscopically directed paravertebral sympathetic nerve block of

the splanchnic nerve and a celiac plexus block. *Id.* Upon discharge, Dr. Johnson diagnosed

Claimant with "a history of pancreatitis with chronic stage III hypertension for surgical

menopause." (R. 411).

   She was hospitalized at Huntsville Hospital again from July 14-17, 2007. (R. 1009-1098).

Upon discharge, her treating physician, Dr. Lizzie M. Harden, diagnosed her with abdominal

pain of uncertain etiology; rectal bleeding secondary to likely internal hemorroids, irritable bowel

syndrome, and hypertension. (R. 1010). Claimant visited the emergency room on July 18 and

July 20, 2007, complaining of abdominal pain. (R. 480-488, 527-539, 550, 559-560). Upon

discharge of the latter visit, she was diagnosed with chronic pancreatitis. (R. 529).

   She went to the emergency room on August 1, August 8, August 16, and August 26,

2007. On those occasions, her medical records show that she had chronic abdominal pain (R.

1099-1117); acute abdominal pain (R.516-526); abdominal pain (R. 467-479); and acute or

chronic abdominal pain with uncertain etiology (R. 453-466), respectively. On August 28-31,

2007, she was hospitalized at Huntsville Hospital. (R. 401-410, 1118-1219). During this visit,

Dr. Clement Okinedo of Central North Alabama Health Services, Inc., determined that Claimant

had numerous erosions in the antrum and prepyloric area and assessed that she had an erosive

esophagitis. (R. 403). Upon discharge, Claimant was diagnosed with peptic ulcer disease and was

given pain medication. *Id.*

   On September 6 and 10, 2007, Dr. Okinedo diagnosed Claimant with chronic pancreatitis.

(R. 1230-1231). On September 18-24, 2007, she was hospitalized and upon discharge, she was diagnosed with recurrent acute pancreatitis, hypertension, hypomagnesia, and hypokalemia. (R. 574). On September 25, September 28, and September 29, 2007, she visited the emergency room for abdominal pain. (R. 622-635, 1229, 443-453).

On October 8 and October 23, 2007, Dr. Okinedo assessed Claimant with abdominal pain and chronic pancreatitis. (R. 1228). On October 29, 2007, she visited the emergency room and upon discharge, was diagnosed with abdominal pain. (R. 618-622). She returned to the emergency room on November 1 and 5, 2007, and both times, was diagnosed with abdominal pain. (R. 1234-1241). On November 8-16, 2007, she was admitted for a celiac plexus block and upon discharge, was diagnosed with severe abdominal pain from chronic pancreatitis. (R. 589-605, 1266-1269).

Claimant went to the emergency room on December 24, 2007 and was diagnosed with abdominal pain. (R. 1270-1278). On December 24-January 4, 2008, she was hospitalized for a celiac plexus block and abdominal pain. (R. 1279-1304). Her treating physician, Dr. Hicks, diagnosed her with chronic pancreatitis; status post celiac plexus nerve block; history of abdominal hysterectomy; bilateral salpingo-ophorectomy; history of peptic-ulcer disease; history of hypertension; history of gastroesophageal reflux disease; history of cholecystectomy; and a history of appendectomy. (R. 1294). She visited the doctor on January 8, 17, and 31, 2008, and her doctor noted her diagnoses as "pancreatitis and possible chronic pancreatitis," but determined that her condition needed to be further evaluated. (R. 1305-1315).

### B. The ALJ Hearing

At a hearing before the ALJ on Monday, November 26, 2007, the Claimant and Karen M.

Vessell, a vocational expert, testified via video teleconference in Decatur, while the ALJ presided over the matter in Florence. (R. 38-39). The Claimant testified that she worked full-time, monitoring kids, at a day care center until February 16, 2007, at which time she became unable to work  because she was "in and out of the hospital" because of "severe pain" in the "upper part of [her] stomach...[that] penetrated [to her] back....[and] the upper part of [her] neck."(R. 1339). Since that day, she has been unemployed, and has not received unemployment or worker's compensation.  She testified that the "severe pain," often accompanied by vomiting and diarrhea, kept her from performing her job because "most of the time" she was "going back and forth to the bathrooms or over a trash can." (R. 1339-1340). She missed a lot of work because of emergency room and hospital visits, and was unable to give her full attention to the kids, was unable to "[sit] with them" at certain times throughout the day, (R. 1339-1340), and could not "pick them up." (R. 1350).

Upon being asked when she began going to the hospital, she stated that "[she] was diagnosed ... with chronic pancreatitis, abdominal pain," about three years prior to the date of the hearing, and that she had "been in the hospital ... at least eight times within a year's time" for "[one] to two weeks at the most." *Id.* She further testified that doctors believed her vomiting was caused by a gallbladder condition at first, and removed it. (R. 1345). She explained that "[t]hey diagnosed her with pancreatitis" when "the pain and throwing up" continued. *Id.*

The Claimant testified that she experiences "pain [that is] so severe." (R. 1352).  She stated that her alleged pain is "chronic" and during periods "[when] it's chronic," her pain is 10 on a scale of 10.  (R. 1352) She stated that the pain is never less than a 6 on a scale of 10, unless she has a "pain block," in which case, it is a 5.  Additionally, she said the pain makes driving

difficult; affects her ability to sit, stand, and move around on a daily basis; causes her to be in bed "most of the day;" and makes her unable to sleep at night. (R.1342-43, 1350-1352). She also testified that she has difficulty bending over because she has "continuous" swelling in her stomach. (R. 1342-1343).

The Claimant testified that she takes the following medications: Demerol and Lortab for pain; Lyrica for nerve pain; Reglan for digestive pain; Promethazine for nausea; Benicar for hypertension; Estratest to counter the hot flashes caused by other medications; Nutrinate Tabs to help her appetite; UTA capsules for urinary pain and discomfort; and over-the-counter Tylenol 8-hour and Motrin. (R. 107).  She stated that she goes to the hospital when the medications do not calm the pain and there, a doctor administers a picc line (a catheter inserted through a vein to provide intravenous medications or fluids) (R.1341). She also stated that she goes to the Tennessee Valley Pain Clinic where they administer "blocks" and steroids for pain and swelling. (R. 1346).

The Claimant testified that, at the time of the hearing, she was separated from her husband and lived in a two-story house with her children, who were ages sixteen, four, and three-years old. (R. 1341, 1343-1344). She stated that she stays on the second floor of her home because she "cannot go down[stairs]," (R. 1344) and that she is able to feed and dress herself. (R. 1342-1343). However, "[a]t least three times a week," she cannot get out of the bed. (R. 1343). When asked how she was able to raise her children under the age of five, whom she adopted in 2004 (R. 1353), she stated that her aunt and the children's godparents help out everyday and on weekends, respectively. (R. 1341-1342). At night, her older son gives the younger children a bath because she cannot bend over due to pain and swelling in her stomach. (R. 1342). She also stated

11

that the same pain and swelling in her stomach prevents her from bending over to tie her shoes at times. (R. 1342). Additionally, she stated that her aunt, her 16-year-old son, and her daughter, who does not live with her, drive her places because she rarely drives, "maybe [once or] twice a month," because she is in pain and her pain medication "keeps [her drowsy]." (R. 1342, 1345). She also said that they have to accompany her to the grocery store because she is only able to shop for 20-25 minutes because of the pain and the medication. *Id.*

A vocational expert  testified concerning the type and availability of jobs that the Claimant was able to perform. ( R. 1356-1363). She stated that the Claimant's skills from her previous work experience as a nursery school attendant or a day care worker were not transferable to a sedentary job. (R. 1356-1357). She opined that the transferable skills from that job would be "some other light or medium work" and "transferable to a medium job such as a child monitor," caring for children. (R. 1357). The ALJ asked the VE "to assume a hypothetical individual with the age*,* education, and prior work history and background as the Claimant;" able to "perform medium work as defined by the SSA;" able "to stand and walk six hours out of an eight hour workday with normal breaks;" is "[l]imited to occasional posture maneuvers such as kneeling, stooping, bending, and crouching; [and s]hould never work on ladders, ropes, ... scaffolds ... hazardous machinery or unprotected heights*.*" ( R. 1357-1358). The VE responded that under these constraints, the Claimant could perform work as a laundry worker, production helper, and cleaner. (R. 1359-1360).

The ALJ asked the VE to identify employment opportunities that the hypothetical individual could perform if, under the aforementioned description and limitations, she had to be allowed "brief, unscheduled access to the restroom every two to two and a half hours during the

work day," and could perform her duties while wearing an "incontinent protection pad." (R. 1360). The VE responded that "most of the jobs [already mentioned] are unskilled and are going to allow ... a morning break, an afternoon break, as well as a [30-minute] lunch break" (R. 1360).

Then, the ALJ asked the VE to "assume the hypothetical individual can perform light work as defined by the SSA; [m]ust be afford a sit/stand option type of job; [w]ould be limited to occasional posture maneuvers such as bowing, stooping, bending, and crouching; [n]ever work on ladders, ropes or scaffolds and work around hazardous machinery or unprotected heights," and asked whether such person could return "to any of the Claimant's prior work or any other work in the regional or national economy?" (R. 1360-1361). She responded that such a person would be unable to return to the Claimant's prior work but that other light jobs as an inspector, counter clerk, and a  parking lot attendant were available. (R. 1361). The ALJ further inquired as to whether someone under the same constraints who is also "limited to occupations which allow [access] to the restroom every two to two and a half hours during the work day and can be performed wearing an incontinent protection pad," could perform those light jobs. (R. 1362-1363). The VE responded that those jobs will not allow a two- to two-and-a-half-hour break between them.[1] (*Id.*). With respect to the incontinence, the VE said that "if it's going to produce a lot of odor problems, then [wearing it] would severely limit [the] jobs she had described because most employers [will not] tolerate that." (R. 1362).

Finally, the Claimant's non-attorney representative asked the VE to "assum[e] that for medical reasons in the type of jobs [about which she had testified], if she missed [over two days a

---

[1] Here, the VE apparently  misunderstood the ALJ's question to be whether a two- to two-and-a-half-hour-long break would be available to a hypothetical individual, instead of whether bathroom breaks at intervals of two- to two-and-a-half-hours would be available to the same.

month] ... would that interfere?" (R. 1363). In response, she testified that "a lot of employers [of semi-skilled jobs] will allow up to two days a month but not to exceed that." (*Id.*). However, she stated that with an unskilled job, "most of the employers will not allow [more] than one day a month." (*Id.*).

### C. The ALJ's Decision

The ALJ concluded that the Claimant suffers from the following  "severe impairments: irritable bowel syndrome; pancreatitis; gastroesophageal reflux disease; peptic ulcer disease; and hypertension." (R. 16; *further discussed in* R.17-22). The ALJ concluded that claimant did not present sufficient evidence to support her anxiety claim, and thus, did not suffer from a "severe mental impairment." (R. 16). The Claimant did not allege, nor did the ALJ conclude, that she was impaired by "the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 22, *citing* 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). In light of these findings, the ALJ further found that claimant had the "residual function capacity" to "meet the exertional demands of medium work ....[and] occasionally can perform postural maneuvers ... [but] cannot work with exposure to hazardous machinery or unprotected heights." (R. 22). Accordingly, the ALJ found that claimant could no longer work as a child care attendant as she had in the past (R. 25, *citing* 20 C.F.R. 404.1565 and 416.965), but "[c]onsidering [her] age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that [she] can perform." (R. 26, *citing* 20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

The ALJ applied the three part pain standard and concluded that "[m]edical evidence shows the claimant has underlying medical conditions, but it does not support her allegations of

severe and chronic pain and limitation of function to the degree that it would preclude the
performance of all substantial gainful activity." (R. 24)

The ALJ found that her allegations of severe pain were "inconsistent with [her] daily
living activities including driving, shopping, and independently caring for her personal needs
such as tying her shoes, feeding herself, and dressing." (*Id.*). He further noted that she "also
dresses and feeds two children who were under the age of 5 at the time of the hearing." (*Id.*).

The ALJ was unable to reconcile Claimant's testimony with her medical records because
"although [she] was diagnosed with pancreatitis, this impairment has not always been the reason
for her hospitalizations and emergency room visits." (R.25; *see also* R.1340). The ALJ
specifically points to Claimant's medical records from September of 2006; June, August,
November, and December of 2007; and January of 2008. (R.25). In September of 2006, claimant
went to the emergency room and claimed she had acute pancreatitis. *Id.* However, the doctor did
not find "CT evidence of acute pancreatitis," and diagnosed her with abdominal pain likely
caused by reflux esophagitis and noted a history of hypertension. *Id.* In June and August of 2007,
doctors noted the absence of a clear etiology. *Id*. In November 2007, the doctor acknowledged
"mild chronic pancreatitis" but further noted that "[he did] not think that [it was] responsible for
all of her abdominal pain." *Id.*  In December of 2007, a physician questioned her records to the
extent that she had previously been diagnosed with chronic pancreatitis. *Id.* He wrote that
"[c]laimant, a 'well-nourished' female 'who is in mild discomfort' has 'chronic abdominal pain'
greater than four years labeled as chronic pancreatitis or recurrent chronic pancreatitis without

ever having a significant elevation of amylase or lipase[2] three times upper limits of normal."*Id.* A month later, in January 2008, the same doctor who had treated her in November of 2007 noted that she "continues to require pain medicine but at times, the degree of pain does not correlate with her symptoms or the severity of her symptoms." *Id*.

The ALJ found that Claimant was not disabled within the meaning of the Social Security Act, and he denied her claim for benefits. (R. 27).

## VI.  DISCUSSION

The Claimant argues that the ALJ failed to consider her pain complaints in compliance with the Eleventh Circuit's three-part pain standard and that substantial evidence does not support his decision. This court agrees.

### A. Substantial evidence supports the ALJ's finding that Claimant suffers from an underlying medical condition.

The three-part pain standard, essentially a two-prong analysis, applies when a claimant attempts to establish disability through his or her own testimony of pain or other objective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The first prong "requires evidence of an underlying medical condition." *Id*.  In this case, the ALJ concluded that the claimant meets the first prong of the test because she suffers from an underlying medical condition.  Claimant neither alleged nor argued that she suffers from an impairment or combination of impairments so as to qualify under 20 CFR Part 404, Subpart P, Appendix 1, but the ALJ determined that she suffers from the following severe impairments:

---

[2] Levels of  "amylase" and "lipase" are significant because they refer to digestive enzymes and elevate in the event of pancreatitis and bowel discomfort.

irritable bowl syndrome, pancreatitis, gastroesophageal reflux disease, peptic ulcer disease, and

hypertension. (R.16-22). The Claimant presented over 3000 pages of medical records from 1995

through 2008 documenting numerous emergency room visits and hospital stays. Accordingly,

this court agrees that the Claimant satisfies the first prong of the pain standard.

> **B. Substantial evidence does not support the ALJ's finding that Claimant failed to satisfy the second prong of the pain standard.**

The second prong requires a claimant to show "objective medical evidence that confirms

the severity of the alleged pain" *or* that her "objectively determined medical condition" is so

severe that her alleged pain is reasonably expected to result. *Holt*, 921 F.2d at 1223 (emphasis

added). If objective medical evidence is not available to support allegations of pain, a claimant's

subjective testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

20 CFR 1529(c)(3) provides as follows:

> Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [the ALJ] carefully consider[s] any other information [submitted in support of alleged] symptoms. Information [provided by a claimant, his or her treating or nontreating source or other persons as to said claimant's] pain or other symptoms (e.g., what may precipitate or aggravate...symptoms, what medications, treatments or other methods [claimant uses] to alleviate them, and how the symptoms may affect [a claimant's] pattern of daily living) *is also an important indicator* of the intensity and persistence of [claimant's alleged symptoms]. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which [any of the aforementioned sources] report, which can be reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account...in reaching a conclusion as to whether [claimant] is disabled. [The determining forum] will consider all of the evidence presented, including information about [claimant's] prior work record, [his or her]

17

statements about [their] symptoms, evidence submitted by [the aforementioned sources], and observations by [the determining body].

*Id.* The ALJ should assess the credibility of subjective evidence with respect to the following factors:

> (1) The claimant's daily activities;
> (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
> (3) Any factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
> (5) treatment, other than medication, the claimant received or has received for relief of pain  or other symptoms;
> (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and
> (7) Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.*  If the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection," in which case a district court would be unable to conclude that the ALJ had evaluated the evidence in the entirety. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561); *see also Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir 1987).

In this case, the ALJ concluded  "that the Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [her] statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible," because the "[m]edical evidence...does not support her allegations of severe and

18

chronic pain and limitation of function to the degree that it would preclude the performance of all substantial gainful activity." (R.24).

This court acknowledges, in the words of the ALJ, "that the Claimant has a strong history of multiple episodes of abdominal pain dating back to 1995 and involving multiple hospitalizations and emergency room visits from 2005 to 2007." (R.24-25). Claimant's medical records reflect that since 2003-04, her doctors have prescribed to her strong pain medication such as Lortab, and Demerol, and even administered several celiac plexus blocks. In *Dyer v. Barnhart*, the Eleventh Circuit distinguished between pain medication for moderate pain and that for severe pain and recognized that Lortab, for example, is used to treat severe pain. 395 F.3d 1206, 1211.

Despite this history of treatment for pain, the ALJ found that the entirety of the medical evidence failed to support the claimant's alleged *severity* of pain. As support for his conclusion, he first explained that if the alleged pain were sufficiently severe, Claimant would be unable to take care of her two children, who were both under the age of 5 years old at the time of the hearing. Further, she would be unable to perform other activities of daily living such as driving; shopping; and independently caring for her personal needs such as getting dressed and eating. (R.24). The ALJ determined as well that claimant's testimony was not wholly consistent with her medical records.

This court finds that substantial evidence does not support the ALJ's reasons for rejecting Claimant's subjective testimony.  In contrast with the ALJ's finding, Claimant's daily activities are not inconsistent with a person suffering from severe pain. Claimant did not testify that she is able to independently take care of her young children.  To the contrary, she testified that she receives help from family members.  She testified that her aunt and her children's godparents

help her during the week and on weekends, respectively.  (R. 1341-42).  She also has an older

son and daughter who help her.  (R. 134-44).  Further, she testified that her older son, who was

16 and lived with her at the time of the hearing, gave her younger children a bath at night,

because pain and stomach swelling made bending over difficult for her.  (R. 1342).  She also

stated that the same pain and swelling in her stomach prevented her from bending over to tie her

shoes at times. (R. 1342).

Also contrary to the ALJ's assessment of Claimant's daily activities is her testimony that

she does not drive and shop without assistance.  Claimant said that she drives "maybe [once or]

twice a month," but cannot do so when she is in pain or on pain medication.  (R. 1342, 1345).

She stated that her aunt, older daughter, or son accompanies her when she goes grocery shopping

because she is only able to shop for 20-25 minutes because of pain and pain medications.  *Id.*

Claimant testified that she is able to feed and dress herself, but has to call her aunt "[a]t least

three times a week," because she cannot get out of bed.  (R. 1343). .

Further, this court recognizes that "participation in everyday activities of short duration,

such as housework or fishing, [do not] disqualif[y] a claimant from disability."  *Lewis v.

Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  The court finds that the Claimant's described

daily activities and the help that she receives in performing them are not inconsistent with

someone suffering severe pain; they do not provide substantial evidence to support the ALJ's

credibility finding.

Further, substantial evidence does not support the ALJ's finding that Claimant's

testimony is inconsistent with her medical records.  As noted previously, the record reflects that

Claimant has received treatment and strong medication for pain in the abdominal region for a

number of years.  The medical records reflect – and indeed, the ALJ also concluded – that

Claimant suffers from a number of "severe" impairments that involve the digestive tract:

"irritable bowel syndrome; pancreatitis, gastroesophageal reflux disease, [and] peptic ulcer

disease. . . ."  (R. 16).  These impairments are often interrelated.  Given the complexity of

Claimant's physical ailments and the doctors' own perplexity at the exact etiology of her pain on

each occasion, Claimant's lay explanation of her problem as "pancreatitis" does not mean that

her testimony contradicts specific physicians' diagnoses in her medical records.  The ALJ found

a conflict between the Claimant's statements that she had pancreatitis, on one hand, and her

emergency room and hospital diagnoses, on the other.  However, Claimant's medical records

reflected frequent diagnoses of pancreatitis in February 2007, March 2007, April 2007, July

2007, September 2007, October 2007, November 2007, and January 2008.  The court sees no

meaningful conflict.

Accordingly, this court finds that substantial evidence does not support the ALJ's reasons

for rejecting Claimant's subjective testimony and his application of the pain standard.

In any event, the court notes that from the alleged onset of her disability in 2007, the

Claimant spent a significant number of days in the hospital during most months: February 2007 -

hospitalized for 8 nights; April 2007 - hospitalized for 8 nights; May 2007 - hospitalized for 10

nights; June 2007 - hospitalized on two occasions, once for 6 nights and again for 7 nights;

August 2007 - hospitalized for 2 nights; September 2007 - hospitalized for 6 nights; November

2007 - hospitalized for 7 nights; and December 2007 - hospitalized for 7 nights. According to the

VE's testimony, she would not have been able to keep a job in the regional or national economy

with such a high number of monthly absences from work. The ALJ's ruling fails to adequately

address this extensive evidence of severe pain.

## VII. CONCLUSION

For the reasons stated above, this court concludes that substantial evidence does not support the decision of the Commissioner; thus, the court REVERSES and REMANDS the action for proceedings consistent with this opinion.


DONE and ORDERED this 30th day of September 2009.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE